*Staff Management Solutions, LLC v. Noor Staffing Group, LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of June, two thousand twenty-one.

PRESENT:   GUIDO CALABRESI,
           WILLIAM J. NARDINI,
                 *Circuit Judges*,
           GARY S. KATZMANN,
                 *Judge.*[1]

———————————————————

IN RE: CORPORATE RESOURCE SERVICES, INC.,
        *Debtor.*

———————————————————

STAFF MANAGEMENT SOLUTIONS, LLC and
PEOPLESCOUT MSP,

         *Appellants*,

    v.                                                      No. 20-3069

WELLS FARGO BANK, N.A., NOOR STAFFING
GROUP, LLC, and NOOR ASSOCIATES, INC.,

---

[1] Judge Gary S. Katzmann, of the United States Court of International Trade, sitting by designation.

*Appellees,*

JAMES S. FELTMAN, *Chapter 11 Trustee of the Estate of Debtors Corporate Resource Services, Inc.*,

        *Trustee-Appellee.*

| | |
|---|---|
| For Appellants: | Ray Hughes, The Hughes Firm, LLC, Chicago, IL<br>Jeffrey Scolaro, Daley Mohan Groble, Chicago, IL |
| For Appellees: | BRUCE W. BIEBER, Kurzman Eisenberg Corbin & Lever LLP, White Plains, NY |
| For Trustee-Appellee: | NEIL BERGER (Patrick Marecki, *on the brief*), Togut, Segal & Segal LLP, New York, NY |

Appeal from an order of the United States District Court for the Southern District of New York (Edgardo Ramos, *J.*) affirming an order of the United States Bankruptcy Court for the Southern District of New York (Martin Glenn, *B.J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellants Staff Management Solutions, LLC and PeopleScout MSP (together "Staff Management") appeal the district court's order dated September 1, 2020, which affirmed the bankruptcy court's order denying Staff Management's motion to enforce a

settlement agreement between Appellee Noor Staffing Group, LLC ("Noor") and the Chapter 11 trustee of Corporate Resource Development, Inc. ("CRD"). On appeal, Staff Management renews its arguments that (1) the settlement agreement's release of liability provisions extend to Staff Management because it was a third-party beneficiary of the agreement, and (2) the parties to the settlement agreement intended to also resolve any claim Noor might have against Staff Management in relation to the approximately $1.2 million in CRD's Wells Fargo account. CRD and Noor disputed the ownership of these funds, and the settlement agreement ultimately resolved the dispute in CRD's favor. Staff Management thus contends that the bankruptcy and district courts erred in concluding that Staff Management did not have prudential standing to enforce the settlement agreement and that Staff Management could not use the agreement to bar Noor's lawsuit against it even if it did have standing. We assume the reader's familiarity with the record.[2]

"When a bankruptcy appeal reaches us after district court review of the bankruptcy court order, our review of the bankruptcy court order is 'plenary.'" *In re N. New England Tel. Operations LLC*, 795 F.3d 343, 346 (2d Cir. 2015) (quoting *Momentum Mfg. Corp. v. Emp. Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir.

---

[2] Staff Management does not press any claims against Noor Associates, Inc. or the CRD trustee on appeal, so we deem any such arguments abandoned. *See United States v. Black*, 918 F.3d 243, 256 (2d Cir. 2019).

1994)). We review conclusions of law *de novo* and findings of fact for clear error. *Id.* Whether the signatories to a contract intended the scope of a release of liability to extend to other parties or claims is a question of fact. *See Perritano v. Town of Mamaroneck*, 126 A.D.2d 623, 624 (N.Y. App. Div. 1987); *see also Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 515 (2d Cir. 2001) ("The interpretation of an unambiguous contract—including a release—is . . . a question of law reserved for the court[, but 'w]here contract language is ambiguous, the differing interpretations of the contract present a triable issue of fact.'" (quoting *Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)) (internal citation omitted)).

The district court did not clearly err in concluding that Staff Management is not a third-party beneficiary of the settlement agreement and therefore does not have standing to enforce it. New York law permits a third party to enforce a contract when "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 52 (2d Cir. 2012) (quoting *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 248 (2d Cir. 2002)). Although it is "well-settled" that the contract need not expressly state the intention to benefit a third party, *Trans-Orient Marine*

4

*Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991), "[t]he contract must 'clearly evidence' an intent by the parties to permit enforcement by the third party," *Bayerische Landesbank*, 692 F.3d at 52 (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)). The settlement agreement here neither expressly states nor clearly evinces the intention to benefit Staff Management.

First, Staff Management has not demonstrated that it was an "agent" of CRD for the purposes of the settlement agreement's release of liability. Staff Management points to its contract with CRD to support its assertion that it was CRD's "paying agent," but the better reading of that contract is that Staff Management was acting as its *client's* agent when paying CRD. Moreover, even if Staff Management acted as CRD's agent when processing payments, that does not necessarily mean that Staff Management was also an "agent" under the settlement agreement. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 (2014) ("Agencies . . . come in many sizes and shapes: 'One may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose.'" (citation omitted)).

Nor has Staff Management demonstrated that it was an "associate" of CRD. Staff Management argues that the dictionary definition of the word "associate" broadly encompassed its role with respect to CRD, but we look to the intent of the parties to

5

determine whether the settlement agreement releases entities like Staff Management from liability. *See Golden Pac. Bancorp*, 273 F.3d at 515 (citing *Stone v. Nat'l Bank & Trust Co.*, 188 A.D.2d 865, 591 N.Y.S.2d 609, 611 (3d Dep't 1992); *Gross v. Sweet*, 49 N.Y.2d 102, 108, 424 N.Y.S.2d 365, 400 N.E.2d 306 (N.Y. 1979)) ("Under New York law, a release—like any contract—must be construed in accordance with the intent of the parties who executed it."). Staff Management has not demonstrated that the CRD trustee and Noor intended the release to cover entities like Staff Management, which may be "associates" of CRD in certain circumstances but not for the purposes of the settlement agreement. And, although Staff Management asserts that it is Noor's burden to establish that the release does not extend to it, Staff Management fails to cite any authority for the proposition that an entity attempting to establish third-party beneficiary status in order to enforce a contract does not have (at the least) the burden of production with respect to the parties' intent to extend the scope of the contract to that entity.

Next, the "circumstances surrounding the transaction" also do not support Staff Management's claim that the parties to the settlement agreement intended to benefit Staff Management. *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005) (quoting Restatement (Second) of Contracts § 302, Reporter's Note, cmt. a). The settlement agreement resolved a multifaceted dispute between the CRD trustee and

6

Noor, stemming from what the trustee alleged was a fraudulent conveyance of CRD's assets to Noor. Noor's release of its claim to the funds in CRD's Wells Fargo account—one compromise of many in the global settlement agreement—was clearly vis-à-vis the CRD estate, and there is no indication that the trustee and Noor also intended the agreement to resolve disputes other than the one between them.

For these reasons, we hold that the district court did not clearly err when concluding that neither the express terms of the contract nor its surrounding circumstances demonstrated the intent to make Staff Management a third-party beneficiary. Therefore, it was not error for the district court to hold that Staff Management lacked standing to enforce the settlement agreement. We need not reach Staff Management's argument that the settlement agreement bars Noor's claim against it.

\* \* \*

We have considered Staff Management's remaining arguments and find in them no basis for reversal. Thus, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

7